UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOHN BURTON,

    Plaintiff,

  vs.

CRYSTAL BENSON, et al.,

    Defendants.

NO. CV-06-0273-JLQ

**ORDER RE: MOTION TO DISMISS AND GRANTING MOTION TO AMEND**

      **BEFORE THE COURT** are Defendant Holmes' and Defendant Cooper's (herein "Defendants") Motion to Dismiss (Ct. Rec. 91 and Ct. Rec. 128); Plaintiff's First Motion to Continue Holmes' and Cooper's Motion to Dismiss (Ct. Rec. 131); and Plaintiff's Motion to Amend the Complaint (Ct. Rec. 144).   These matters have been submitted without oral argument.

**I.  Procedural History**

      Plaintiff seeks damages from the Defendants based upon an injury he allegedly suffered on February 27, 2004, which is described in more detail in the next section.

      The Fourth Amended complaint alleges that on December 22, 2004, Plaintiff sent a "Notice of Claim" without the aid of counsel, to the Office of Financial Management, Risk Management Division, in Olympia, Washington.  On or about December 29, 2004, the Office of Financial Management denied the claim.

      On September 18, 2006, Plaintiff filed his Complaint without a motion to proceed *in forma pauperis* ("IFP"). On October 19, 2006, Plaintiff was granted IFP status and the pro se Complaint that day naming the State of Washington Department of Corrections, Crystal Benson and "Bosses Unknown" as a Defendants.

ORDER - 1

On October 31, 2006 the First Amended Complaint was filed naming only Benson and Cooper as Defendants.

On November 30, 2006 the court struck the proposed Second Amended Complaint. Ct. Rec. 40.

On October 31, 2007 the Third Amended Complaint was filed naming Benson, Holmes, and Cooper.

January 31, 2008 the Fourth Amended Complaint was filed naming Benson, Holmes, Cooper and John/Jane Does "responsible for the hire, discipline and discharge of Crystal Benson" as Defendants. The Fourth Amended Complaint alleges that on June 28, 2007 Plaintiff mailed another "Notice of Claim", this time with aid of counsel, to the Office of Financial Management, Risk Management Division, in Olympia, Washington

On April 18, 2008, Plaintiff filed motion for leave to file a Fifth Amended Complaint which would add allegations and substitute real parties (Department of Corrections employees) for the John/Jane Does named in the Fourth Amended Complaint.

## II.    Allegations in the Fourth Amended Complaint

The operative pleading that is the subject of the Motion to Dismiss is the Fourth Amended Complaint filed by Plaintiff through counsel.   Plaintiff asserts the Defendants are responsible for constitutional violations stemming from a series of events which led to the criminal conviction and incarceration of Defendant Crystal Benson. It is alleged Plaintiff is a man who was under supervision in this jurisdiction by the Washington State Department of Corrections.  Ct. Rec. 126, ¶ 2.11.  Defendant Crystal Benson was a Community Corrections Officer supervising individuals in this jurisdiction.  On February 27, 2004 at 1:00 p.m., Benson approached Plaintiff about getting crack cocaine for herself, mentioning her usual source, allegedly a friend of Plaintiff.  Plaintiff proceeded to get into Benson's car and travel to an apartment building where he was provided crack cocaine.  He returned to the car with the cocaine and Benson asked where she could smoke it.  Plaintiff directed Benson to his residence.  Upon entry, Benson brandished her badge and gun and told the Plaintiff "I am a cop. I am not going to arrest you right now."

*Id.* at ¶ 2.21.  When Plaintiff's girlfriend arrived at the residence, Benson directed
Plaintiff to leave with Benson.  Fearing his arrest, Burton allegedly agreed to leave and
they drove to Benson's house.  While en-route Benson told Plaintiff she wanted to kill a
co-worker and that the co-worker had informed her boss, Defendant Steve Holmes, of her
drug addiction and use of her badge and gun to obtain drugs.  She also allegedly told
Burton that another co-worker, Defendant Renee Cooper, had told her, "If it weren't for
me, you would have been fired."  *Id.* at ¶ 2.31 .  At the residence, Plaintiff feared he was
being set up for arrest.  Burton agreed to engage in sexual intercourse Benson.  Plaintiff
discovered Benson had taken his cell phone and told Benson he wanted to go home.
When Plaintiff stood up to leave, Benson hit him over the head with a cast iron frying pan
and as he tried to leave, stabbed him in the back with a butterfly knife.  Burton fell down
the front steps, ran to a neighbor's house and was taken to the hospital.

Benson was charged with First Degree Assault, Attempted Second Degree Murder,
and Making False or Misleading Statements to a Public Servant.  On July 19, 2004
Benson pled guilty to First Degree Robbery and on August 24, 2004 was sentenced to
35.25 months incarceration.

Defendants here include Benson, Holmes, and Cooper, all employees (or former
employees) of the Washington State Department of Corrections.  Plaintiff also names
"John and Jane Doe", other employees of the Department of Corrections, who are
identified in Plaintiff's Motion to Amend. Plaintiff raises two claims for relief. In the first,
he claims Defendants violated 42 U.S.C. § 1983 by subjecting him to "reckless, callous,
and/or a deliberate disregard for...clearly established constitutional rights..."  Ct. Rec.
126.  While no constitutional right is expressly mentioned in the Complaint itself,
Plaintiff's briefing mentions his right to privacy and right to be free from unreasonable
intrusion/injury by corrections officers as an individual under supervision.  His second
claim for relief raises a state law claim of negligence against Defendant Holmes.

According to Plaintiff Holmes knew or should have known of Benson's criminal
record, history of drug use, and dilatory job performance.  Despite Benson's drug use and
erratic and dilatory job performance, Holmes allegedly failed to adequately supervise

ORDER - 3

Benson to protect individuals under supervision and protect injury to Plaintiff.  Plaintiff claims this failure indicates deliberate indifference or reckless disregard to the safety of the Plaintiff.

Defendants Cooper and Holmes seek dismissal, asserting Plaintiff's claims as articulated in the Fourth Amended Complaint fail as a matter of law on the following grounds: (1) Plaintiff fails to state a constitutional violation; (2) Plaintiff fails to allege any personal participation on the part of Holmes or Cooper; (3) Even assuming Plaintiff can state a violation and that Cooper and Holmes individually participated in the violation, Cooper and Holmes are entitled to qualified immunity; (4) The claims against Holmes and John/Jane Does are time barred; and (5) Plaintiff fails to state a legal or factual basis for a common law claim for negligent employee supervision.

## III.  Rule 12(b)(6) Legal Standard

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).   Because Rule 12(b)(6) focuses on the "sufficiency" of a claim-and not the claim's substantive merits-"a court may [typically] look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc*., 284 F.3d 977, 980 (9th Cir. 2002).  The Federal Rules of Civil Procedure embrace a notice-pleading standard. All that is required to survive a Rule 12(b)(6) motion is "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), in order to "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  In pleading the grounds of the claim, the plaintiff need not provide "detailed factual allegations," *id.*; however, the plaintiff must plead enough facts "to raise a right to relief above the speculative level." *Id*. at 1965.  Factual allegations that are consistent with lawful conduct are insufficient to state a claim.  *Id.* at 1966.  Such allegations are neutral and do not suggest "plausible liability" on the claim.  *See id.* at 1966 n. 5 (recognizing a line "between the factually neutral and the factually suggestive," which "must be crossed to

enter the realm of plausible liability"). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990). For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.

**IV. DISCUSSION**

**A.    42 U.S.C. § 1983**

1.    Underlying Violation of a Constitutional Right

Defendants contend that Plaintiff's complaint must be dismissed because it fails to allege any violation of a constitutional right. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40 (1988). Plaintiff must sufficiently allege a violation of his constitutional rights by each defendant. Moreover in order to establish a § 1983 claim against a supervisor for their participation in the unconstitutional act of the supervisor's subordinate, one must be able to demonstrate the subordinate violated the constitution. Put simply, if there is no underlying violation of Plaintiff's constitutional rights by a state actor his claim against the other defendants for deliberate indifference necessarily fails.

Defendants are correct that Plaintiff does not specifically name a specific constitutional amendment under which his federal claim is pursued. In Plaintiff's Reply to Defendant's Response to the Plaintiff's Motion to Amend the Complaint, Plaintiff argues his claims fall under the constitutional rights to privacy and to be free from unjustified intrusion on his personal security. The failure to cite to any particular constitutional amendment does not subject the complaint to dismissal under the liberal federal pleading rules. Plaintiff's allegations are best characterized as asserting a *substantive* fourteenth amendment liberty claim of the type enunciated in *Ingraham v. Wright*, 430 U.S. 651, 673 n. 42, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977) (right to be

free from unjustified intrusions on personal security) and *Youngberg v. Romeo*, 457 U.S. 307, 315-16, 102 S.Ct. 2452, 2457-58, 73 L.Ed.2d 28 (1982) (right to personal security and to be free from bodily restraint).  *See, e.g.*, *Johnson v. Newburgh Enlarged School District*, 239 F.3d 246, 251-52 (2d Cir. 2001) (analyzing a student's claim that gym teacher used excessive force under the Fourteenth Amendment's substantive due process guarantee because the assault occurred in non-seizure, non-prisoner context); *Haberthur v. City of Raymore*, 119 F.3d 720, 723-24 (8th Cir. 1997) (concluding that the plaintiff, who was not under arrest or under suspicion of criminal activity, adequately alleged that police officer's sexual assault violated her substantive due process right to bodily integrity or privacy); *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997) (holding that claim brought by a plaintiff, who was not arrested or a criminal suspect but was raped by a police officer, was properly viewed as asserting a violation of her substantive due process right to bodily integrity under the Fourteenth Amendment, rather than as a violation of her Fourth Amendment rights).

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." However, as the Supreme Court has noted the purpose of the Due Process Clause of the Fourteenth Amendment is to "protect the people from the State, not to ensure that the State protected them from each other." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195 109 S.Ct. 998 (1989)(nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors).  "As a general matter...a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.*

On this issue, Defendants contend Benson's lawless behavior against Plaintiff was conducted off-duty and was not related to the lawful or purported exercise of her responsibilities as a community corrections officer.  Though Defendants do not frame their argument this way, it is in essence an argument that Benson was not acting "under color of state law" when she solicited him for drugs, hit Plaintiff over the head with a

frying pan, and stabbed him with a butterfly knife.  While it will certainly be pertinent for the court to decide whether Benson's conduct was an abuse of *official* authority, it is not an issue which can be resolved here in the context of a 12(b)(6) motion.  The only facts before the court are those contained in the Plaintiff's Fourth Amended Complaint which the court must accept as true and which contend that Benson acted under color of law, utilizing her badge and gun, and abusing the authority given to her by the state.

As to Defendants Cooper and Holmes, it can be implied from the Complaint that Plaintiff contends these individuals' failure to discharge their duties and thus protect Plaintiff from danger posed by Benson was an abuse of governmental power.

2.    Personal Participation

A claim based on the Due Process Clause of the Fourteenth Amendment, does not transform every tort committed by a state actor into a constitutional violation. *See Daniels v. Williams*, 474 U.S., at 335-336, 106 S.Ct., at 667; *Parratt v. Taylor*, 451 U.S., at 544, 101 S.Ct., at 1917; *Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980); *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 26, 61 L.Ed.2d 433 (1979); *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).  To state a claim under Section 1983, plaintiff must allege defendant's direct personal responsibility for the claimed deprivation of a constitutional right. *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). In other words, personal participation is an essential allegation in a Section 1983 claim and failure to allege personal involvement is fatal to such a claim.

Defendant Cooper and Holmes argue that plaintiff has not stated a claim under § 1983 because he has not alleged their personal participation in any constitutional violation.  Plaintiff responds that the complaint does allege specific actions taken by each defendant alleging that they were deliberately indifferent to his constitutional rights.

a.    Cooper

The single factual allegation in the complaint which mentions Cooper is at paragraph 2.31 which alleges that while in the car, *Benson* told the Plaintiff that Ms. Cooper had told Benson that "If it weren't for [her], [Benson] would have been fired."  ¶

2.31. Plaintiff alleges this comment implies Cooper intervened to prevent Benson's discharge.  The allegations in the Fourth Amended Complaint against Ms. Cooper are insufficient to state a claim against this co-worker.   There is no allegation Ms. Cooper personally participated in the alleged constitutional violation committed by Ms. Benson.  There is no allegation Ms. Cooper had any authority over Ms. Benson, had any duty to protect Plaintiff, or had any authority for establishing corrections policy.  In fact there is no allegation that Ms. Cooper acted at all.   This single factual averment concerning an alleged statement by Ms. Cooper contains absolutely no allegation from which an inference could be drawn that she had any knowledge of a substantial risk of harm to the Plaintiff.   Even if it could be surmised from this averment that Cooper either knew or heard rumors of illicit behavior by Ms. Benson and/or that she made statements to her superiors either ignoring or lying about some previous incident or improper conduct by Benson, is insufficient since simple awareness of a co-worker's misconduct does not lead to liability under § 1983.  Such allegations are not sufficient to accuse Cooper of either contributing to the lawlessness of Benson's conduct or acting with any specific intent or desire to cause physical injury to the Plaintiff.  Moreover, with no allegation that Cooper had any individual responsibility to act when faced with reports of corrupt behavior of fellow community corrections officer, the court finds the Fourth Amended Complaint fails to state an alleged violation of Plaintiff's constitutional rights by Defendant Cooper.  The absence of alleged facts involving Ms. Cooper fails to raise Plaintiff's § 1983 claim against her above the speculative level necessary to survive a motion to dismiss.

        b.    Supervisor Liability - Holmes

        The complaint must allege in specific terms how each named defendant is involved.  Plaintiff's alleged harm certainly results from Benson's conduct in assaulting him. According to Plaintiff, this harm might not have occurred had Holmes (and others, as identified in the Motion to Amend) had supervised Benson more closely.

        Supervisory liability under § 1983 exists "if the supervisor participated in or directed the [constitutional] violations, or knew of the violations and failed to act to prevent them." *Hydrick v. Hunter*, 466 F.3d 676, 689 (9th Cir. 2006) (internal quotations

omitted) (denying motion to dismiss for failure to state a claim because plaintiffs had alleged that supervisors were "willfully blind to constitutional violations committed by their subordinates").  Lacking such "overt personal participation," § 1983 supervisory liability still exists if the official implements a policy that is deliberately indifferent to the plaintiff's constitutional rights, and that policy is the moving force behind the violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989). There is no liability when the sole basis of the claim arises from a vicarious liability theory.  *Id*. at 645-46. Moreover, if the supervisory liability is premised on a deliberately indifferent policy implemented by the official, "[i]n the Ninth Circuit, [a] plaintiff[ ] need not specifically allege a policy, it is enough if the policy may be inferred from the allegations of the complaint."  *Greenawalt v. Sun City West Fire Dept.*, 250 F.Supp.2d 1200, 1217 (D.Ariz. 2003).  Although federal pleading standards are broad, some facts must be alleged to support claims under § 1983. *See Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

In the Fourth Amended Complaint, it is alleged that Defendant Holmes had authority over Benson, that he had notice of Benson's drug use and addiction, and erratic and dilatory job performance, and omitted to perform background checks before hiring Benson.  It is further alleged he failed to exercise proper supervisory authority to divest Benson of her authority as a community corrections officer and protect the safety of the Plaintiff under her supervision.  Case law establishes that a supervisor may be liable for failing to screen or otherwise inquire about his subordinates or into their actions. *See, e.g., Fiacco v. City of Rensselaer*, 783 F.2d 319, 329-31 (2d Cir. 1986) (finding sufficient evidence to support a jury's finding that a police chief was deliberately indifferent to his officers' use of excessive force because the evidence showed that the chief failed to exercise reasonable care in investigating several claims of police brutality and instead conducted only a superficial questioning of the accused officers), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987). As a general proposition, Holmes may be found liable if, in supervising Benson, he exhibited deliberate indifference to a high risk that Benson would violate Plaintiff's constitutional rights, and Holmes' neglect resulted in

Benson violating Plaintiff's rights.  Accordingly, the court concludes the Plaintiff has sufficiently pleaded a cognizable legal claim against Holmes.

3.    Qualified Immunity

Defendants' motion to dismiss the Plaintiff's civil rights claim on qualified immunity grounds is denied because the motion is premature in view of the lack of discovery at the time the motion was filed.  Moreover qualified immunity can be better decided on a motion for summary judgment.

**B.    Negligence**

In the Fourth and Fifth Amended Complaint the Plaintiff alleges a state law negligence claim against Benson's supervisors for negligent hiring, supervision, and retention of Defendant Benson.  The factual allegations are that these Defendants knew or should have known of Benson's drug and assault history and risk of danger to others and that they failed to conduct a background check prior to hiring her. Plaintiff claims Defendants failed to monitor or evaluate Benson despite this history, thus creating a foreseeable risk of harm to the Plaintiff.  This claim invokes a recognized basis for recovery in Washington: employers may be held liable for negligence in hiring, supervising or retaining an employee.  *Niece v. Elmview Group Home*, 131 Wash.2d 39, 48, 929 P.2d 420 (1997); *Scott v. Blanchet High Sch.*, 50 Wn.App. 37, 43, 747 P.2d 1124 (1987) (quoting 53 Am.Jur.2d Master and Servant § 422 (1970)) (emphasis added), review denied, 110 Wn.2d 1016 (1988); *see also Haubry v. Snow*, 106 Wn.App. 666, 31 P.3d 1186 (2001).   Although Defendants argue Plaintiff will be unable to show any duty to control Benson or that Plaintiff's injuries were proximately caused by these supervisors conduct, Plaintiff has stated a claim sufficient to withstand a Fed.R.Civ.P. 12(b)(6) motion to dismiss on this issue.  However, how far this claim can proceed will depend on the evidence before the court during further proceedings.

**C.    Statute of Limitations and Relation Back**

Defendants also argue the claims in the Fourth Amended Complaint against Holmes and John/Jane Does filed January 31, 2008 should be dismissed because these Defendants were first named in a complaint which was not filed until after the three-year

statute of limitations expired.  Plaintiff has identified the John/Jane Does in the proposed Fifth Amended Complaint which is the subject of the Motion to Amend the Complaint also pending before the court.  Defendants also argue the statute of limitations provides a basis for denying the Motion to Amend.  Plaintiff does not dispute that the statute of limitations had run by the time of his actual claims against Holmes and/or the John/Jane Does, but submits that the court should allow the claims against these Defendants  to relate back to the time of the filing of his original complaint.

For actions under brought under 42 U.S.C. § 1983 , like the one here, federal courts apply the forum state's statute of limitations, along with the forum state's law regarding tolling, including equitable tolling. *Canatella v. Van De Kamp*, 486 F.3d 1128, 1133 (9th Cir. 2007).  In the State of Washington, the limitations period for a personal injury claim is three years.  *Joshua v. Newell*, 871 F.2d 884, 886 (9th Cir.1989) (citing R.C.W. § 4.16.080(2)). Accordingly, the applicable limitations period in this case expired three years from the date plaintiff's cause of action "accrued." R.C.W. § 4.16.080(2); *Bagley v. CMC Real Estate Corp*., 923 F.2d 758, 760 (9th Cir. 1991). A federal claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Bagley*, 923 F.2d at 760.

A district court may grant a motion to dismiss on statute of limitations grounds only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled. *Tworivers v. Lewis*, 174 F.3d 987, 991 (9th Cir.1999).The statute of limitations tolls "when the complaint is filed." RCW 4.16.170; *U.S. Oil & Ref. Co. v. Dep't of Ecology*, 96 Wn.2d 85, 91 (1981). The same applies in an action to enforce a federally created right. *Henderson v. United States*, 517 U.S. 654, 657 n. 2 (1996); *Hoffman v. Halden*, 268 F.2d 280, 302 (9th Cir.1959); rev'd on other grounds, *Cohen v. Norris*, 300 F.2d 24 (9th Cir.1962).   Federal Rule of Civil Procedure ("FRCP") 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint.  In addition, the substitution of a real party defendant for a "John Doe" defendant after the expiration of the applicable limitations period constitutes the "changing" of a party, such

that the requirements of FRCP 15(c)(3) must be satisfied.

The Fourth Amended Complaint (and the Proposed Fifth Amended Complaint) was filed several months after the three-year statute of limitations had expired.   Unless the Fourth Amended Complaint relates back to the previously filed complaints under Rule 15(c)(3), Plaintiff's claims against Holmes and John/Jane Doe are time barred. FRCP 15(c)(3) contains several requirements. The first is that FRCP 15(c)(2) is satisfied. Plaintiff file his original complaint pro se.  Plaintiff's first complaint was plainly based on the same factual predicates as his later complaints, thus the court finds that this requirement is met. Second, within the 120 days after filing provided by FRCP 4(m) for service, the new parties must have "received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits." FRCP 15(c)(3)(A). Finally, the party to be brought in must have known or "should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." FRCP 15(c)(3)(B).

As succinctly noted by the United States Supreme Court, "[t]imely filing of a complaint, and notice within the limitations period to the party named in the complaint, permit imputation of notice to a subsequently named and sufficiently related party." *Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). Under this so-called "identity-of-interest exception," an "amendment that substitutes a party in a complaint after the limitations period has expired will relate back to the date of the filing of the original complaint." *Id*. The "object of the exception is to avoid the application of the statute of limitations when no prejudice would result to the party sought to be added." *Id.*

Plaintiff contends that all defendants, including those named in the Proposed Fifth Amended Complaint, had at least constructive notice of this suit prior to the expiration of the statute of limitations.  Plaintiff specifically alleges that recently obtained discovery shows that Steve Holmes was put on actual notice of Plaintiff's claim on or about December 22, 2004.  Moreover, the Declaration of James Sweetser filed in support of Plaintiff's Motion to Amend claim alleges the new Defendants identified in the Fifth

Amended Complaint were also aware of Plaintiff's Notice of Claim.  Ct. Rec. 146 at ¶ 7. Defendants deny actual timely notice of the litigation.

The record as it stands is insufficient to allow the court to determine precisely what type of notice existed and when the individual defendants had notice of the institution of this action.  However, it seems that the named Defendants are so closely related in business to the Department of Corrections along with Crystal Benson and unnamed "bosses" named in the original complaint, that it is fair to presume or impute knowledge upon Holmes and the newly identified agency defendants of the institution of the action shortly after it was commenced.  Thus, the court believes both the Fourth Amended and the Proposed Fifth Amended Complaint would relate back under FRCP 15(c).

However, even if the notice and/or mistake requirements of Rule 15(c)(3) are not met, the circumstances here call for the equitable tolling of the statute of limitations.  The nature of this action and the fact that Plaintiff has alleged Benson's bosses or supervisors were responsible has not changed since the institution of this action.  The general purpose of a statute of limitations is to "compel the exercise of a right of action within a reasonable time so that the opposing party has fair opportunity to defend, while witnesses are available and evidence is fresh in their minds."  *Willis v. Maverick*, 760 S.W.2d 642, 646 (Tex. 1988).  As a pro se litigant, the Plaintiff in this case was at a disadvantage in trying to discover and identify possible supervisory defendants who may have been accountable for his injury.  Since obtaining counsel, Plaintiff has proceeded with his case diligently and filed his requests to amend within a short time after discovery documents enabled him to identify additional defendants.  Finally, there has been no contention nor does the court find that there has been substantial prejudice to the state defendants in defending against this action because of the relatively minimal delay here.  These reasons give the court an equitable reason to suspend the statute of limitations period and extend it to allow addition of the newly named defendants.  *Finkelstein v. Sec. Properties, Inc.,* 76 Wash.App. 733, 739-40, 888 P.2d 161 (1995).

Accordingly, the court will not dismiss the claims against Holmes or deny the Motion to Amend on the basis of the statute of limitations.

## IV.    MOTION TO AMEND

Plaintiff seeks to amend the Fourth Amended Complaint seeking to add newly named Defendants Lois Bradford, Kaye Adkins, Jack Kopp, and Todd Wiggs.  In addition the Proposed Fifth Amended Complaint adds numerous factual allegations against these and the existing Defendants, other than Cooper.  Defendants argue the motion to amend should be denied because the amendment would be futile.

Generally, a plaintiff may amend his or her complaint once "as a matter of course at any time before a responsive pleading is served..." Fed.R.Civ.P. 15(a).  If a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.").  Courts consider five factors to assess whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment[,] and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir.1990) (*citing Ascon Props., Inc. v. Mobil Oil Co*., 866 F.2d 1149, 1160 (9th Cir.1989)). Whether to grant leave to amend lies within the district court's discretion. *Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

The Court, in its discretion, grants Plaintiff leave to filed the Fifth Amended Complaint, except as to Defendant Cooper.  While the Fifth Amended Complaint names Cooper as a Defendant, it does not allege the liability of Cooper in either the federal or state causes of action.  In any case, just as in the Fourth Amended Complaint, the factual averments against Cooper are still insufficient to state a claim, thus any amendment would be futile.  Accordingly, when the Fifth Amended Complaint is filed, Defendant Cooper <u>shall not be a named  Defendant in this action</u>.

No scheduling order has been entered.  No evidence in the record supports a finding of bad faith. As it is this court's understanding that general discovery is ongoing, the case will not be unduly delayed and no party would be prejudiced by amendment.

Although Defendants argue amendment would be futile, the reasons Defendants offer for futility are, as the court stated above, for the most part best addressed in motions for summary judgment following discovery rather than on a motion to amend or motion to dismiss the complaint.  The Court therefore will grant Plaintiffs' motion to amend.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant Holmes' and Cooper's Motion to Dismiss **(Ct. Rec. 91)** is **GRANTED** as to Defendant Cooper and **DENIED** as to Defendant Holmes.

2. Plaintiff's Motion to Continue of Defendants' Motion to Dismiss Renee Cooper and Steve Holmes **(Ct. Rec. 131)** is **DENIED** as **MOOT**.

3. Plaintiff's Motion to Amend the Complaint **(Ct. Rec. 144)** is **GRANTED**, except as to Defendant Cooper.  Plaintiff shall forthwith file their Fifth Amended Complaint, omitting from the caption and ¶1.7 Defendant Renee Cooper.

4. Defendant's shall have **FIFTEEN (15) days** from the date of filing of the Fifth Amended Complaint to file their Answer or other responsive pleading.

5.  The parties will thereafter be given electronic notice of a telephone Scheduling Conference at which the court will establish pretrial deadlines and set the matter for trial.

**IT IS SO ORDERED.**  The Clerk of this court shall enter this Order and forward copies to counsel.

**DATED** this 13th day of June 2008.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE